### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| MARIAN SNOW, | } |
| Plaintiff, | } |
| vs. | } Case No.: 7:17-CV-01961-LSC |
| GENERAL ELECTRIC COMPANY, et al., | } |
| Defendants. | } |

### DEFENDANT GENERAL ELECTRIC COMPANY'S
### REPLY IN SUPPORT OF ITS MOTION TO DISMISS[1]

Plaintiff Marian Snow has not met her burden of establishing personal jurisdiction or venue in this District. Notwithstanding her self-serving affidavit ("the Affidavit"), [Doc. #34] – which (1) contradicts her prior judicial representations and (2) is more telling for what it does not say than for what it does – Snow <u>never</u> avers she received a text message in this District and presents no evidence that GE intentionally sent text messages to her here.[2] Thus, there is no basis for personal jurisdiction over GE, and venue likewise is improper because (a) no defendant resides here and (b) neither allegation nor evidence shows a substantial part of the events or omissions giving rise to her claims occurred here. And, even if

---

[1] GE adopts the arguments in the Reply Brief submitted by the Dell Defendants. [Doc. #35].

[2] Snow suggests GE waived any challenge to personal jurisdiction or venue, [Doc. #33 at 14-15], but Rule 12(h) permits a defendant to raise personal jurisdiction and venue challenges at the time of its deadline to respond initially to the complaint, notwithstanding a prior appearance in the case. FED. R. CIV. P. 12(h)(1)(B). GE did so; thus, there is no waiver.

1

Snow had met her burden, the Court should still dismiss this case because she has failed to allege with plausibility that GE used an ATDS.

## General Jurisdiction

GE is "a New York corporation headquartered in Boston, Massachusetts." [Doc. #4 ¶ 6]. It is not "at home" in Alabama; therefore, general jurisdiction does not exist. Daimler AG v. Baumer, 134 S. Ct. 746 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011).[3]

## Specific Jurisdiction

**First,** Snow admits she received text messages between April 1, 2014, and early August 2014 in North Carolina, but no allegation or evidence establishes where she received the remaining alleged text messages through January 2015. Snow says only that, "[a]t no time, after the first week of August 2014, was [she] located within the state of North Carolina when the text messages came" and that "[she] was only physically present in North Carolina to have been able to receive them between the day [she] purchased the cellular telephone, March 29, 2014, through the first week in August 2014." [Doc. #34 at 6]. Snow never says where

---

[3] Snow offers no reason why this is the "exceptional" case to expand general jurisdiction. Her references to GE's business activities, [Doc. #33 at 10-12], do not provide such a reason. Daimler, 134 S. Ct. at 761 n.19; Locke v. Ethicon, Inc., 58 F. Supp. 3d 757, 762-64 (S.D. Tex. 2014) (rejecting claim that substantial revenue in Texas justified exercise of general jurisdiction over defendant in Texas); Chavez v. Dole Food Co., 947 F. Supp. 2d 438, 443 (D. Del. 2013) (ownership of facility and transfer and sale of products in Delaware did not make company at home there).

she was when she got the text messages after early August 2014. More to the point, she never claims to have received a single text message in Alabama.

Snow claims she was "domiciled" in Alabama at some point "subsequent[]" to leaving North Carolina in August 2014. [Doc. #34 at 2]. Not only has she failed to demonstrate this to be true in light of contrary representations she made in prior judicial proceedings, but Snow's domicile is not the same as where she received the text messages. Snow avers that she "subsequently moved [her] son and [herself] to be with [her] aging mother at [her] childhood home in Tuscaloosa County." Id. At most, this means only that she moved to Alabama at some unspecified point after July 2014 – not that she was continuously present in Alabama from August 2014 until January 2015. Moreover, she suggests she "moved [her] furniture and belongings out of the state of North Carolina," id., but does not state to where she moved them. In any event, the location of her "furniture and belongings" does not establish the location where she received any text messages.[4] Snow further states that for some unspecified period of time she stayed with her daughter in another state, [Doc. #34 at 2] – not Alabama. In sum, the Affidavit is deliberately vague about Snow's location after July 2014 and nowhere states that she received any of the alleged text messages in Alabama. Even crediting the Affidavit, it is insufficient to establish specific jurisdiction over GE in this District.

---

[4] The two photographs of telephone messages she supplied do not indicate (1) the date of the messages or (2) where she was when she allegedly received them. [Doc. #34 at 9-10].

3

**Second,** although Snow now claims to have "exited" North Carolina for the missing period of time, she repeatedly represented otherwise in court filings in 2014 and 2015.[5] On August 13, 2014, in not one but two separate federal court filings in North Carolina, Snow advised the court and the defendants of her "new" address in Wilson, North Carolina. [Docs. #25-2, 25-5]. The postmark on the envelope for both of those filings used the Wilson, North Carolina, return address but curiously the postmark suggests she mailed them from "Carol Stream, IL" – not Alabama:



[Doc. #25-5 at 4]; see also [Doc. #25-2 at 4] [same].

Moreover, in January 2015 – five months after Snow allegedly "exited NC" – she filed a lawsuit in the District Court of Tuscaloosa County (i.e., where she now

---

[5] The Affidavit is contrary to another affidavit presented by Snow. In Snow v. Wells Fargo Bank, N.A., et al., Case No. 7:14-CV-2 (E.D.N.C.), Snow represented that she resided at 4472 Island Drive, North Topsail Beach, North Carolina. [Doc. #25-1 at 25]. She testified that property was her "principal dwelling." Id. at 34. Curiously, she now characterizes it as having been "vacation rental property" and states that she "never stayed in that house for more than sporadic weekends and never for a length of time that extended a week or two each year." [Doc. #34 at 2]. The discrepancy is telling. In that case, Snow was seeking relief, inter alia, for alleged violations of RESPA, but RESPA does not apply to rental properties. See, e.g., Henok v. Chase Home Finance, LLC, 950 F. Supp. 2d. 96, 98 (D.D.C. 2013).

4

claims she was residing at the time), yet represented <u>again</u> that she lived in Wilson, North Carolina. [Doc. #25-11 at 2]. In March 2015 – seven months after she allegedly "exited NC" – she was <u>still</u> using that same address in filings with the District Court of Tuscaloosa County:



[Doc. #25-12 at 2]. It defies common sense that Snow, who was receiving state court notices through the mail as a pro se litigant, would have elected for the Tuscaloosa County Court to send notices to her in North Carolina when she allegedly was residing in Tuscaloosa County as she now claims.

While this Court must "construe all reasonable inferences in favor of the plaintiff" if a plaintiff's affidavit directly contradicts a defendant's, <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1360 (11th Cir. 2006), that rule does not apply to Snow's own conflicting representations. Even a pro se plaintiff should not be entitled to deliberately vary her claimed place of residence in judicial filings to suit her purposes at any given time. Because the Affidavit does not establish where she allegedly received text messages between

5

early August 2014 and January 2015 – and, in fact, is deliberately vague on that point, [Doc. #34 at 2, 6] [stating she was not "within the state of North Carolina" but not stating where she was] – the Court should credit Snow's prior judicial representations as unrebutted evidence that Snow was not in Alabama.

**Third,** even if Snow was in Alabama when she received some of the text messages, her physical presence is insufficient to warrant the exercise of specific jurisdiction. In the context of a TCPA and conversion claims, no court has exercised specific jurisdiction over a non-resident defendant on a record like this one. Under Calder v. Jones, 465 U.S. 783 (1984),[6] a non-resident defendant's conduct supports jurisdiction if the conduct "was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008). For example, in Michaels v. Micamp Merchant Services, the court granted a motion to dismiss in a TCPA case because neither evidence nor allegation supported those conclusions.[7]

---

[6] See, e.g., Keim v. ADF Midatlantic, LLC, 199 F. Supp. 3d 1362, 1369-70 (S.D. Fla. 2016) (applying Calder to TCPA claim); Precision IBC, Inc. v. Wagner Ink, Inc., No. 12-671, 2013 WL 1728563, at *9 (S.D. Ala. Apr. 22, 2013) (applying Calder to conversion claim).

[7] Michaels v. Micamp Merchant Services, No. 13-191, 2013 WL 5874569, at *4 (W.D. Pa. Oct. 31, 2013) ("[T]here is no evidence, let alone a preponderance of the evidence, from which this Court can conclude that either of the Defendants expressly aimed their conduct at Pennsylvania, as is required to establish specific personal jurisdiction. Defendants utilized an 'automatic telephone dialing system' . . . to call Plaintiff, Plaintiff's cellular telephone number bears a Florida area code, not one registered to Pennsylvania, and at no time did Plaintiff inform Defendants that he was located in Pennsylvania.").

6

As an initial matter, Snow concedes that GE did not send the alleged text messages to her purposefully but only "unwitting[ly]." [Doc. #4 ¶ 49]. Thus, by her own allegations, the first Calder prong is not satisfied. The second prong fails because, as many courts have found, defendants must be on notice that text messages were likely to be directed to the forum where the lawsuit was pending – for example, from the telephone number's area code. See, e.g., Luna v. Shac, LLC, No. C14-00607, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (collecting cases); see also [Doc. #25 at 15-17 nn. 41-44] [collecting cases]. Here, "the alleged conduct was 'aimed' at North Carolina, if anywhere," given that Snow's telephone number had a North Carolina area code and, thus, was affiliated with North Carolina, not Alabama. [Doc. #25 at 15-16]. Snow ignores that argument, but the Affidavit bolsters the conclusion: while a North Carolina citizen in March 2014, she purchased a cell phone in North Carolina and was assigned a telephone number with a North Carolina area code. [Doc. #34 at 2, 6].[8]

Nothing shows that GE knew or should have anticipated that the alleged text messages would have been received in Alabama. Given the area code associated with the number, North Carolina would have been the only forum to where any conduct was arguably "aimed." Luna, 2014 WL 3421514, at *4. Snow's presence in Alabama – assuming she even was present – is precisely the sort of "random,"

---

[8] Snow claims she corresponded with GE between July 2014 and September 2014, [Doc. #34 at 5-6], but she submits none of those messages and does not aver that she told GE her location.

"attenuated," and "unilateral" event that courts have rejected as insufficient for specific jurisdiction. See, e.g., Ashton v. Florala Mem. Hosp., No. 06-226, 2006 WL 2864413, at *5 (M.D. Ala. Oct. 5, 2006). Because Snow has not argued that GE should have known that its alleged text messages were "aimed at" Alabama or would have "caused harm . . . [to] be suffered in" Alabama, there is no specific jurisdiction over GE in the Northern District of Alabama.

## Venue

**First,** venue is not proper under 28 U.S.C. § 1391(b)(1) because the defendants are not subject to personal jurisdiction in this District and thus do not "reside" here. See 28 U.S.C. § 1391(c)(2).[9] **Second,** venue is not proper under § 1391(b)(2) because it requires more significant contact with the forum than the Due Process Clause minimally requires. See, e.g., TMJ Practice Management Assocs., Inc. v. Curran, No. 16-81903, 2017 WL 3130421, at *5 (S.D. Fla. July 24, 2017). Snow has failed to establish that she received a text message from GE here or that GE did anything in Alabama to subject it to her lawsuit here. See, e.g., Verity v. Scott, No. 12-609, 2014 WL 3053171, at *7 (M.D. Fla. July 7, 2014).[10] Accordingly, she has failed to establish proper venue in this district.[11]

---

[9] Snow cites 28 U.S.C. § 1391(c) for the proposition that venue is proper wherever the defendant is "licensed to do business or is doing business." [Doc. #33 at 15]. But that statute does not permit venue under those circumstances. As to GE's Alabama business activities that Snow identifies, [Doc. #33 at 10-12], she does not explain how they relate to the claims in this case.

[10] Although Snow claims that for 40% of the time the text messages were sent to her she was in North Carolina, [Doc. #34 at 6], that does not mean that for the balance of the time she was in

## ATDS

**First**, the TCPA expressly defines an ATDS as equipment that has the "<u>capacity</u> to store or produce telephone numbers to be called using a <u>random or sequential number generator</u>" and dial the stored numbers. 47 U.S.C. § 227(a)(1) (emphasis added). Snow focuses exclusively on the fact that the alleged text messages appear to have been sent by a device with auto-dialing capability. [Doc. #33 at 25] ["Transmission of this quantity of messages would be impossible without the source possessing the capacity to dial numbers without human intervention"]. But an ATDS requires more than automated dialing; it specifically requires the capacity to generate numbers that are automatically called through a random or sequential number generator. Snow does not allege any facts suggesting that the text messages originated from such a device.

Instead, Snow tries to write this requirement out of the statute, arguing that it is "technologically antiquated." [Doc #33 at 23]. But the FCC ruling she cites does not support this position. Rather the language focuses on a different element of the statute – the requirement for a "call" – and concludes that a text constitutes a "call" within the meaning of the statute. See FCC, 15-72 Declaratory Ruling & Order ¶ 109 (July 10, 2015). Further, that section of the FCC's ruling concerns technology

---

Alabama. Snow does not quantify the number of text messages that she received anywhere other than in North Carolina.

[11] If Snow makes a request to transfer pursuant to 28 U.S.C. § 1406(a), GE would not object to a transfer to the Eastern District of North Carolina.

that "can create millions of addresses and send an unlimited number of unsolicited text messages." Id. ¶¶ 107-09. There is no allegation that GE used such technology.

While Snow's allegations regarding the "frequency, number, nature and character of Defendants' text messages" may be indicative of auto-dialing, [Doc. #4 ¶ 52], she alleged no specific facts to plausibly support her conclusory assertion that GE used an ATDS to send her the alleged text messages. Snow's Affidavit contains no specific facts that plausibly demonstrate that the alleged text messages were sent to her by a random or sequential number generator, or equipment with such capacity, and thus, it fails to fill the void. This, despite the fact that she claims to have communicated with a GE employee about the messages.

**Second**, Snow avoids the fact that her own allegations suggest the messages were targeted to the previous owner of her phone number, which is inconsistent with the sort of random or sequential number generation required for an ATDS. In fact, her Affidavit, like the Amended Complaint, supports the inference that the text messages were targeted to a specific person as an "internal business or industrial communication" or a "remote alert." [Doc. #4 ¶ 51]. Snow claims to have sent an inquiry using GE's website, in which she stated that she was receiving hundreds of text messages "meant for [GE's] server security." [Doc. #34 ¶ 16]. Thus, Snow again alleges that the text messages were targeted at an individual recipient and thus were not sent en masse by an ATDS to a randomly- or sequentially-generated number.

          Respectfully Submitted,

Dated: <u>February 12, 2018</u>          */s/ Wesley B. Gilchrist*
          One of the Attorneys for GE

OF COUNSEL:
Wesley B. Gilchrist
*wgilchrist@lightfootlaw.com*
Brooke G. Malcom
*bmalcom@lightfootlaw.com*
Jeffrey P. Doss
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:   (205) 581-0700
Facsimile:   (205) 581-0799

## CERTIFICATE OF SERVICE

On this <u>12th</u> day of <u>February</u>, 2018, I certify that a copy of the foregoing was served on the following through this Court's electronic filing system:

Derin B. Dickerson          Adam P. Plant
Cassie Johnson          Battle & Winn, LLP
Alston & Bird, LLP          2901 2nd Avenue South, Suite 220
1201 West Peachtree Street          Birmingham, Alabama 35233
Atlanta, Georgia 30309

I further certify that a copy of the foregoing was served on the following through U.S. mail, postage prepaid:

Marian Snow
4336 Ridgewood Road
Tuscaloosa, Alabama 35404

          */s/ Wesley B. Gilchrist*
          Of Counsel